IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| QUIKRETE HOLDINGS INC. and CONTINENTAL CASUALTY COMPANY,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>KEALII BASHAM,<br><br>　　　　　Defendant. | ) CIVIL NO. 24-00515 HG-WRP<br>)<br>) FINDINGS AND<br>) RECOMMENDATION TO GRANT<br>) PLAINTIFFS' MOTION FOR<br>) DEFAULT JUDGMENT AS TO<br>) DEFENDANT KEALII BASHAM<br>)<br>)<br>)<br>)<br>)<br>) |

FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION
FOR DEFAULT JUDGMENT AS TO DEFENDANT KEALII BASHAM

Before the Court is Plaintiffs Quikrete Holdings, Inc. (Quikrete) and

Continental Casualty Company's (CCC) (collectively, Plaintiffs) Motion for

Default Judgment as to Defendant Kealii Basham (Motion), ECF No. 23.

Defendant Kealii Basham (Basham or Defendant) did not respond to the Motion,

and Plaintiffs did not file a reply memorandum.  At the Court's request, Plaintiffs

filed a Supplemental Memorandum in Support of Plaintiffs' Motion for Default

Judgment (Supplement) on November 10, 2025, ECF No. 27.  The Court finds this

Motion suitable for disposition without a hearing pursuant to Rule 7.1(c) of the

Local Rules of Practice of the United States District Court for the District of

Hawai'i.  After careful consideration of the record in this action and the relevant

legal authority, the Court FINDS AND RECOMMENDS that Plaintiffs' Motion be

GRANTED.[1]

## FACTUAL BACKGROUND

### A. The Underlying Lawsuit

The present action is related to the state court case captioned,

Jeremiah, et al., v. Deer, et al., Civ. No. 1CCV-23-00001076, in the First Circuit

Court, State of Hawaii (Underlying Lawsuit).  Complaint, ECF No. 1 ¶ 7.  The

Underlying Lawsuit was filed on August 18, 2023, by Shelly Kahealani Jeremiah –

proceeding individually and as personal representative of the estate of Darryl

Gamaliel Kanani Jeremiah, Jr. (Jeremiah) – and three of Jeremiah's minor children

(collectively, Underlying Plaintiffs).  Id.

The Underlying Lawsuit alleges that Jeremiah was employed as a

driver at BOMAT Holdings dba Bonded Materials Company (Bomat), which is a

wholly owned subsidiary of Quikrete.  Id. ¶ 8.  The state court complaint asserts

claims against Jeffrey H. Deer (the President of Bomat), Robert Taylor (a manager

at Bomat), and Defendant (a supervisor at Bomat) (collectively, Underlying

Defendants).  Id. ¶ 9.

---

[1] Within fourteen days after a party is served with the Findings and
Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written
objections in the United States District Court.  A party must file any objections
within the fourteen-day period to preserve appellate review of the Findings and
Recommendation.

According to the state court complaint, on August 20 and 23, 2021, Defendant reported to work with COVID-19 symptoms, including fever, coughing, and body aches.  Id. ¶ 10.  On each of those days, the Underlying Defendants required Jeremiah to work in tight, confined indoor spaces with no ventilation, safety gear, or safety standards, and in close proximity to other employees, including Defendant.  Id.  Jeremiah was therefore exposed to COVID-19 on those two days and tested positive for COVID-19 one week later.  Id. ¶¶ 10, 12.  Less than two months later, on October 21, 2021, Jeremiah died from COVID-19 complications.  Id. ¶ 12.

The state court complaint asserts Underlying Defendants failed to adhere to, implement or enforce safety policies and protocols concerning COVID-19 exposure in the workplace.  Id. ¶ 13.  Underlying Plaintiffs claim that Jeremiah's death and other associated injuries and damages were directly and proximately caused by the intentional, wanton, reckless, grossly negligent and/or negligent actions and/or omissions of the Underlying Defendants.  Id. ¶ 14. Underlying Plaintiffs seek to recover special and general damages, including medical care, wage loss, physical injuries, emotional and mental trauma and distress, psychological injuries, pain and suffering, mental anguish, loss of enjoyment of life, and loss of consortium.  Id. ¶ 15.

Deer and Taylor were served with the state court complaint, and insurance defense counsel was appointed to represent them by Quikrete pursuant to the CCC Policy No. 6049837965, effective 01/01/2021 to 01/01/2022 (the Policy). Id. ¶¶ 16, 18; Exhibit B to Complaint, ECF No. 1-2.  Insurance defense counsel contacted Deer and Taylor and obtained their agreement to represent them. Complaint, ECF No. 1 ¶ 19.

Regarding Defendant, Underlying Plaintiffs were unable to contact him.  Id. ¶ 22.  After Defendant was served by publication and failed to appear, the First Circuit Court entered default against him.  Id. ¶¶ 24-25.

Insurance defense counsel was also unable to contact Defendant, even after hiring a private investigator and attempting to contact Defendant by mail and phone.  Id. ¶¶ 20-21.

**B. The Policy**

At all times relevant, Quikrete was the named insured under the Policy.  Complaint, ECF No. 1 ¶ 27.  For purposes of this Motion, Plaintiffs "do not contest whether the underlying defendants, including Basham, are insureds under the Policy."  Motion, ECF No. 23 at 18.  Subject to a full reservation of rights, Plaintiffs are providing a defense to Green and Taylor in the Underlying Lawsuit.  Id. at 19.

Regarding bodily injury, the Policy provides in part:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    1. **Insuring Agreement**

      a. We will pay those sums that the **Insured** becomes legally obligated to pay as **damages** because of **bodily injury** or **property damage** to which this insurance applies.  We will have the right and duty to defend the **Insured** against any **suit** seeking those **damages**.  However, we will have no duty to defend the **Insured** against any **suit** seeking **damages** for **bodily injury** . . . to which this insurance does not apply . . . .

      b. This insurance applies to **bodily injury** . . . only if:

      (1) The **bodily injury** . . . is caused by an **occurrence** . . . .

Complaint, ECF No. 1 ¶ 29.  "Bodily injury" is defined as:

**Bodily injury** means physical injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury sustained by that person at any time which results as a consequence of the physical injury, sickness or disease.

Id.  An "occurrence" is defined in the Policy as:

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Id.

However, the Policy also provides:

[W]e will have no duty to defend the **Insured** against any **suit** seeking **damages** for **bodily injury** . . . to which this insurance does not apply.

Id. ¶ 29.  One of the coverage exclusions in the Policy is in the Employment-

Related Practices Exclusion Endorsement, which provides:

It is understood and agreed that under **COVERAGES**, **Coverage A – Bodily Injury** . . . , the paragraphs entitled **Exclusions**, are amended to add the following exclusion:

*This insurance does not apply to*:

***Bodily injury*** *. . .  to:*

(1) *a person arising out of any*:

. . .

(c) *employment-related practices, policies, acts or omissions*, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) *the* ***spouse****, child, parent, brother or sister of that person as a consequence of* ***bodily injury*** *to that person at whom any of the employment-related practices described in Paragraphs* ***(a), (b), or (c)*** *above is directed*.

This exclusion applies:

(1) whether the injury-causing event described in Paragraphs **(a), (b), or (c)** above occurs before employment, during employment or after employment of that person;

(2) whether the **Insured** may be liable as an employer or in any other capacity; and

(3) to any obligation to share **damages** with or to repay someone else who must pay **damages** because of the injury.

Exhibit B to Complaint, ECF No. 1-2 at 87 (emphases added).  Thus, pursuant to

the Employment-Related Practices Exclusion Endorsement, insurance coverage

does not apply to claims of "bodily injury" to "a person arising out of any"

"employment-related practices, policies, acts or omissions[.]"  Motion, ECF No. 23

at 20-21.

PROCEDURAL BACKGROUND

On December 6, 2024, Plaintiffs filed the Complaint against

Defendant, asserting claims for: (1) failure to cooperate (Count I); and

(2) declaratory relief (Count II).  Complaint, ECF No. 1 at 17-18.  The Complaint

prays for, among other things, "a binding judicial declaration that [Plaintiffs] have

no duty to defend and/or indemnify [Defendant] under the CCC Policy for

underlying plaintiffs' claims of bodily injury asserted against him in the underlying

lawsuit[.]"  See id. at 18.

On March 5, 2025, this Court granted Plaintiffs' Ex Parte Motion for

Extension of Time and to Serve Defendant Kealii Basham by Publication.  Minute

Order, ECF No. 12.  Specifically, the deadline to serve Defendant was extended to

June 4, 2025, and the Court granted Plaintiffs' request to serve Defendant by

publication.  Id.  The Amended Summons in a Civil Case and Notice of Complaint

was thereafter published in the Honolulu Star-Advertiser four times during April

2025.  See Affidavit of Publication, ECF No. 18.  A Publication Return Hearing

7

was held on June 26, 2025, but Defendant did not appear.  <u>See</u>  Publication Return

Hearing Minutes, ECF No. 19.

On June 30, 2025, default was entered against Defendant.  <u>See</u> Clerk's

Entry of Default, ECF No. 21.

The present Motion for Default Judgment followed, in which

Plaintiffs seek declaratory relief that they owe no duty to defend or indemnify

Defendant in the Underlying Lawsuit.  <u>See</u> Motion, ECF No. 23.

DISCUSSION

Default judgment may be entered if the defendant has defaulted by

failing to appear.  <u>See</u> Fed. R. Civ. P. 55(b).  The grant or denial of a motion for

default judgment is within the discretion of the court.  <u>Haw. Carpenters' Trust</u>

<u>Funds v. Stone</u>, 794 F.2d 508, 511-12 (9th Cir. 1986).  Default judgments are

ordinarily disfavored, and cases should be decided on their merits if reasonably

possible.  <u>Eitel v. McCool</u>, 782 F.2d 1470, 1472 (9th Cir. 1986).  The court should

consider the following factors in deciding whether to grant a motion for default

judgment:

> (1)  the possibility of prejudice to the plaintiff;
> (2)  the merits of plaintiff's substantive claim;
> (3)  the sufficiency of the complaint;
> (4)  the sum of money at stake in the action;
> (5)  the possibility of a dispute concerning material facts;
> (6)  whether the default was due to excusable neglect; and
> (7)  the strong policy underlying the Federal Rules of Civil
>       Procedure favoring decisions on the merits.

8

Id. at 1471-72 (citation omitted).

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).  The allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which it is entitled.  See Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Also, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citations omitted).

### A. Jurisdiction

Before considering the merits of default judgment, the Court has an affirmative obligation to determine whether it has subject matter jurisdiction over this action and personal jurisdiction over Defendant.  See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").  The Court is satisfied that it has diversity jurisdiction over Plaintiffs' claims.  See 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is between--(1) citizens of different States[.]"); see also

Supplement, ECF No. 27.  The Court also has personal jurisdiction over Defendant

because he was properly served in accordance with the Federal Rules of Civil

Procedure (FRCP).  See Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d

1132, 1135 (9th Cir. 2009) ("A federal court is without personal jurisdiction over a

defendant unless the defendant has been served in accordance with [FRCP] 4."

(citations omitted)); see also Affidavit of Publication, ECF No. 18; Publication

Return Hearing Minutes, ECF No. 19.

### B. Eitel Factors

Following a determination that jurisdiction is proper, the Court must

consider whether default judgment is appropriate under the Eitel factors outlined

above.

### 1. The Possibility of Prejudice to Plaintiffs

The first factor considers whether Plaintiffs would suffer prejudice if

default judgment is not entered.  See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp.

2d 1172, 1177 (C.D. Cal. 2002).  Defendant has not defended against Plaintiffs'

claims in this case at all.  Defendant neither responded to the Complaint nor

entered an appearance in this case.  Absent entry of default judgment against

Defendant, Plaintiffs would be without recourse for the claims in this case.

Therefore, the first Eitel factor favors default judgment.

## 2. Merits of Plaintiffs' Substantive Claims

As noted above, for purposes of liability, the factual allegations in the complaint are taken as true on default.  See TeleVideo Sys., Inc., 826 F.2d at 917-18; Fair Hous. of Marin, 285 F.3d at 906.  In the present Motion, Plaintiffs seek default judgment in the form of declaratory relief that they owe no duty to defend or indemnify Defendant in the Underlying Lawsuit.  See Motion, ECF No. 23.

As noted above, this Court has diversity jurisdiction over this case under 28 U.S.C. § 1332.  Under Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), federal courts sitting in diversity apply federal procedural rules and substantive state law.  See Burlington Ins. Co. v. United Coatings Mfg. Co., 518 F. Supp. 2d 1241, 1246 (D. Haw. 2007).  Therefore, Hawaii insurance law governs the interpretation of the Policy.  See State Farm Fire & Cas. Co. v. Willison, 833 F. Supp. 2d 1200, 1214 (D. Haw. 2011) ("In a diversity action, Hawaii insurance law governs." (Citation omitted.)).

Under Hawaii law, courts must look to the language of the insurance policy to determine the scope of the insurer's duties.  See Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Hawaiʻi 277, 287, 875 P.2d 894, 904 (1994).  The Hawaii Supreme Court has provided the following guidance for interpreting insurance policies:

> [I]nsurance policies are subject to the general rules
> of contract construction; the terms of the policy should be

11

> interpreted according to their plain, ordinary, and
> accepted sense in common speech unless it appears from
> the policy that a different meaning is intended.
> Moreover, every insurance contract shall be construed
> according to the entirety of its terms and conditions as set
> forth in the policy.
>
> Nevertheless, adherence to the plain language and
> literal meaning of the insurance contract provisions is not
> without limitation.  We have acknowledged that because
> insurance policies are contracts of adhesion and are
> premised on standard forms prepared by the insurer's
> attorneys, we have long subscribed to the principle that
> they must be construed liberally in favor of the insured
> and any ambiguities must be resolved against the insurer.
> Put another way, the rule is that policies are to be
> construed in accord with the reasonable expectations of a
> layperson.

Dairy Rd. Partners v. Island Ins. Co., Ltd., 92 Hawaiʻi 398, 411-12, 992 P.2d

93, 106-07 (2000) (internal citations, quotation marks, brackets, and ellipses

omitted).

The duty to defend "is broader than the duty to pay claims and arises

wherever there is the mere *potential* for coverage."  Sentinel Ins. Co., 76 Hawaiʻi

at 287, 875 P.2d at 904 (emphasis in original) (citation and internal quotation

marks omitted).  "In other words, the duty to defend rests primarily on the

*possibility* that coverage exists.  This possibility may be remote, but if it exists, the

insurer owes the insured a defense."  Id. (citations, internal quotation marks, and

internal brackets omitted) (emphasis in original).  "All doubts as to whether a duty

to defend exists are resolved against the insurer and in favor of the insured."  Id.

(citations, internal quotation marks, and internal brackets omitted).

Hawaii adheres to the "'complaint allegation rule.'" Burlington Ins.

Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) (citing

Pancakes of Hawaii, Inc. v. Pomare Props. Corp., 85 Hawai'i 286, 291, 944 P.2d

83, 88 (Ct. App. 1997)).  The duty to defend "'is limited to situations where the

pleadings have alleged claims for relief which fall within the terms for coverage of

the insurance contract.'"  Id. (citing Hawaiian Holiday Macadamia Nut Co. v.

Indus. Indem. Co., 76 Hawai'i 166, 169, 872 P.2d 230, 233 (Haw. 1994)).  Where

the pleadings "fail to allege any basis for recovery within the coverage clause, the

insurer has no obligation to defend."  Id. (citing Hawaiian Holiday, 76 Hawai'i at

169, 872 P.2d at 233) (internal quotation marks omitted).  Insurers "owe[] a duty to

indemnify the insured 'for any loss or injury which comes within the coverage

provisions of the policy, provided it is not removed from coverage by a policy

exclusion.'"  Gemini Ins. Co. v. ConstRX Ltd., 360 F. Supp. 3d 1055, 1065 (D.

Haw. 2018) (citations omitted).

Turning to the Policy at issue here, the Policy states:  "We will pay

those sums that the **Insured** becomes legally obligated to pay as **damages** because

of **bodily injury** . . . to which this insurance applies."  Complaint, ECF No. 1 ¶ 29.

Further, "insurance applies to **bodily injury** . . . only if . . . [t]he **bodily injury** . . .

is caused by an **occurrence**[.]"  Id.  Plaintiffs do not dispute that Defendant is an

13

"insured" under the Policy.  See Motion, ECF No. 23 at 18.  Additionally, Plaintiffs

do not appear to dispute that "bodily injury" occurred or was caused by an

"occurrence."

However, the Policy also states:  "we will have no duty to defend the

**Insured** against any **suit** seeking **damages** for **bodily injury** . . . to which this

insurance does not apply."  Complaint, ECF No. 1 ¶ 29.  To that end, the

Employment-Related Practices Exclusion Endorsement provides:

> This insurance does not apply to:
>
> **Bodily injury** . . .  to:
>
> (1) a person arising out of any:
>
> > . . .
> >
> > (c) employment-related practices, policies, acts or
> > omissions, such as coercion, . . . ; or
>
> (2) the **spouse**, child, parent, brother or sister of that
> person as a consequence of **bodily injury** to that person
> at whom any of the employment-related practices
> described in Paragraphs **(a), (b), or (c)** above is directed.

Exhibit B to Complaint, ECF No. 1-2 at 87.  In sum, this endorsement states that

insurance coverage does not apply to claims of "bodily injury" to "a person arising

out of any" "employment-related practices, policies, acts or omissions[.]"  Motion,

ECF No. 23 at 20-21.

According to the state court complaint, Defendant was a supervisor at

Bomat and "required Jeremiah to work in tight, confined indoor spaces with no

ventilation, safety gear, or safety standards, and in close proximity to other

14

employees, including BASHAM, who presented with COVID-19-related

symptoms."  Complaint, ECF No. 1 ¶¶ 9-10.  Defendant also "failed to adhere to,

implement or enforce safety policies and protocols concerning COVID- 19

exposure in the workplace, including, but not limited to, requiring proper social

distancing in non-ventilated workspaces and providing or requiring the use of

appropriate safety protection and equipment."  Id. ¶¶ 11, 13.  As a result of

Defendant's "intentional, wanton, reckless, gross negligent and/or negligent actions

and/or omissions," Jeremiah was exposed to COVID-19 at his workplace, which

resulted in his death and Underlying Plaintiffs' damages.  Id. ¶¶ 14-15.

Based on the allegations in the state court complaint, Jeremiah's

bodily injury resulted in part from Defendant's "employment-related practices,

policies, acts or omissions[.]"  Exhibit B to Complaint, ECF No. 1-2 at 87.

Additionally, the state court complaint confirms that any injury to Jeremiah's

spouse or children was "a consequence of bodily injury to [Jeremiah] at whom . . .

the employment-related practices . . [were] directed."  Id. (emphasis omitted).

Therefore, based on the allegations against Defendant in the state court complaint

and considering the plain language of the Employment-Related Practices Exclusion

Endorsement, the Court finds that insurance coverage "does not apply to" the

15

claims against Defendant and that, therefore, Plaintiffs have no duty to defend or indemnify Defendant in the Underlying Lawsuit.[1]

Furthermore, even if the Court determined that Plaintiffs have a duty to defend or indemnify Defendant, Defendant has not responded to the insurance defense counsel's efforts to represent him in the Underlying Lawsuit. Complaint, ECF No. 1 ¶¶ 20-21 (detailing counsel's efforts at contacting Defendant). As such, Defendant has failed to satisfy his duty to cooperate with the insurer, as required by the Policy. Id. ¶ 39; Exhibit B to Complaint, ECF No. 1-2 at 38.

Accordingly, the Court FINDS that Plaintiffs' allegations, taken as true, are sufficient to establish that Plaintiffs owe no duty to defend or indemnify Defendant with respect to the Underlying Lawsuit. The Court therefore finds that this factor (merits of Plaintiffs' substantive claims) weighs in favor of default judgment.

### 3. Sufficiency of the Complaint

As discussed above, the allegations in the Complaint are sufficiently pled. Therefore, this factor weighs in favor of default judgment as to all claims in the Complaint.

---

[1] This Court's finding applies only to Defendant and is not intended to be interpreted as applying to any other Underlying Defendant.

### 4. Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176. However, where declaratory relief is sought rather than monetary damages, this factor weighs in favor of default judgment. See Maxum Indem. Co. v. Kaur, No. 1:17-cv-01467-LJO-JLT, 2019 WL 7605677, at *2 (E.D. Cal. Jan. 9, 2019) ("The fourth Eitel factor, the sum of money at stake in the action, also weighs in favor of default judgment as [the plaintiff] does not seek monetary damages in this declaratory relief action."). Here, Plaintiffs seek only declaratory relief. See Complaint, ECF No. 1 at 18. Thus, the Court finds that this factor weighs in favor of default judgment.

### 5. Possibility of Dispute Concerning Material Facts

As noted above, the well-pled factual allegations of the Complaint, except those relating to the amount of damages, will be taken as true. See TeleVideo Sys., Inc., 826 F.2d at 917-18. Defendant has been given a fair opportunity to defend this action and has not done so at all. Therefore, the Court finds that this factor favors default judgment.

### 6. Whether Default Was Due to Excusable Neglect

"The sixth Eitel factor considers whether defendant's default may have been the product of excusable neglect." Ho v. Tan Trinh, No. 8:16-cv-481-

17

JLS-JCGx, 2016 WL 11520810, at *5 (C.D. Cal. Oct. 27, 2016) (citation omitted).

"This factor favors a default judgment when the defendant has been properly

served or the plaintiff demonstrates that the defendant is aware of the lawsuit." Id.

(citation omitted).  As noted above, Defendant was served by publication and a

Publication Return Hearing was held, but Defendant has not appeared in this case.

See Affidavit of Publication, ECF No. 18; Publication Return Hearing Minutes,

ECF No. 19.  The Court therefore finds that this factor favors entry of default

judgment.

### 7. Policy Favoring Decisions on the Merits

Defendant's default renders a decision on the merits impractical, if not

impossible.  Under Rule 55, "termination of a case before hearing the merits is

allowed whenever a defendant fails to defend an action." PepsiCo., Inc., 238

F. Supp. 2d at 1177; see Philip Morris USA, Inc. v. Castworld Prods., Inc., 219

F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b)

indicates that the seventh Eitel factor is not alone dispositive") (citation omitted).

Here, Defendant has failed to defend this action and has consequently rendered

adjudication on the merits before this Court impracticable.  This factor does not

preclude the Court from entering default judgment against Defendant.

### 8. Totality of Eitel Factors

The Court finds that the totality of the factors discussed above weighs

in favor of entering default judgment against Defendant.  Therefore, this Court

recommends entry of default judgment in favor of Plaintiffs in the form of

declaratory relief that Plaintiffs do not owe Defendant a duty to defend or

indemnify him in the Underlying Lawsuit.

CONCLUSION

For the foregoing reasons, the Court FINDS and RECOMMENDS

that Plaintiffs' Motion for Default Judgment as to Defendant Kealii Basham, ECF

No. 23, be GRANTED.  The Court further recommends that the Court enter

declaratory relief in favor of Plaintiffs that Plaintiffs do not owe Defendant a duty

to defend or indemnify him in the Underlying Lawsuit.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, December 31, 2025.



Wes Reber Porter
United States Magistrate Judge

Quikrete Holdings, Inc., et al. v. Basham; CV. NO. 24-00515 HG-WRP; FINDINGS
AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR DEFAULT
JUDGMENT AS TO DEFENDANT KEALII BASHAM.